## Case No. 7,008.

ILLINOIS CENT. R. CO. et al. v. MISSISSIP-
PI CENT. R. CO. et al.[1]

District Court, N. D. Mississippi. Dec. 13,
1876.

RAILROAD BONDS—ISSUE UNDER LEGISLATIVE AU-
THORITY—MORTGAGE TO SECURE SAME — VALID-
ITY WITHOUT RECORDING—FORECLOSURE—RIGHTS
OF JUNIOR MORTGAGEE — RECEIVER — OUSTER—
TRUSTEE UNDER MORTGAGE.

[1. Bonds issued by a railroad company under
legislative authority constitute a debt against
the corporation, and a mortgage given to secure
the same is valid, between the parties to it,
without registration.]

[2. Where a prior mortgagee of a railroad
fails to take possession, a junior mortgagee,
whose rights are in danger by reason of the
mortgagor's possession, may in a suit to fore-
close, on sufficient cause shown, have a receiver
appointed; but such appointment is without
prejudice to the prior mortgagees, whether so
stated in the order of appointment or not.]

[3. When a receiver so appointed takes pos-
session, his possession is that of the court, and
he cannot be ousted except by its order.]

[4. When trustees under prior railroad mort-
gages take possession of the mortgaged proper-
ty, and undertake to execute the trusts prejudi-
cially to the subsequent incumbrancers, a court
of equity may restrain the improper execution
of the trust, or take possession from such trus-
tees, and appoint a receiver.]

[5. The legal title of the trustees to the prop-
erty of the corporation is only for the purpose
of executing the trusts, and a court of equity,
having like power of execution, will not sur-
render possession unless it is apparent that the
trustees can better execute the trust in justice
to all parties.]

[6. Where a receiver of a railroad has been
appointed on foreclosure of a junior mortgage
covering the whole road, and the senior mort-
gages cover but a portion of the road, for the
purpose of execution of the trusts by the court
in such prior mortgages the property covered
thereby should be separated from the whole, and
another receiver appointed for that portion.]

The question now presented for decision
arises upon the motion of Jacob Thompson
et al., trustees under the first mortgage, and
a portion of the bondholders under that
mortgage, to have J. B. Alexander, the re-
ceiver heretofore appointed by this court,
removed from said receivership, and the
property held by him and covered by said
mortgage delivered and turned over to said
trustees, to be used and employed by them
in payment of the debt secured by said mort-
gage, which motion is resisted by the com-
plainants. To a proper understanding of
the questions raised by the motion it is
necessary to give a brief statement of the
facts as presented by the record. The Mis-
sissippi Central Railroad Company was duly
and legally incorporated by the act of the
legislature of the state of Mississippi, and
afterwards amended by various acts, for
the purpose of constructing and operating a
railroad from Canton on the Mississippi to
the Tennessee line. To raise means to carry
out this enterprise said company, in pursu-
ance of authority vested in them by said

1 [Not previously reported.]

acts of the legislature, issued a large num-
ber of bonds with interest coupons attached,
payable at different dates. To secure the
payment of these bonds, with interest, said
company, on the 1st day of November, 1854,
executed to Jacob Thompson, Charles But-
ler, and Azariah C. Flagg, a mortgage, a
trust deed, conveying said railroad, with
all its rolling stock and other appurten-
ances, and property then owned by said com-
pany, or which might thereafter be acquir-
ed, and providing that upon the nonpay-
ment of these bonds or the interest thereon
as the same might fall due, demand thereof
being first made, and default for the space
of sixty days, the persons holding such
bonds or interest coupons might apply to
said trustees to take possession of said
railroad and its property, and operate the
same, and, after applying the proceeds, as
far as necessary, to the payment of the
necessary expenses for operating the road,
apply the residue to the payment of such
due and unpaid indebtedness. This mortgage
was duly recorded according to the provi-
sions of the statutes in such cases. Said
Mississippi Central Railroad Company after-
wards, for the same purpose, issued what
are known as "second mortgage bonds" to
a large amount, to secure the payment of
which, with the interest coupons attached,
a mortgage or trust deed was executed to
trustees therein named with similar powers.
Afterwards said Mississippi Central Railroad
Company leased said railroad with all its
properties to H. S. McComb et al. for a term
of years. Said lessees were afterwards in-
corporated by an act of the legislature of the
state under the name of the Southern Rail-
road Association. To provide for the ex-
tension of said railroad, which had before
that time been consolidated with that por-
tion of said railroad from the state line to
Jackson, Tenn., under a corporation created
by the laws of Tennessee, from Jackson,
Tenn., to Cairo, Ill.; and to provide for the
payment of the bonds theretofore issued,
before mentioned, said Mississippi Central
Railroad and said Southern Railroad As-
sociation on the 1st day of May, 1872, issued
what are known as the "third mortgage
bonds," to secure the payment of which,
with interest, said Mississippi Central Rail-
road Company and the Southern Railroad
Company executed a mortgage or trust deed
to the trustees therein named, with like
powers and conditions named in the first
and second mortgages. That on the 13th
day of April, 1874, by acts of the respective
state legislatures through which the New
Orleans, Jackson & Great Northern Railroad
and the Mississippi Central Railroad, as
extended by said Southern Railroad As-
sociation, from Canton to Cairo, were con-
solidated under the name of the New Or-
leans, St. Louis & Chicago Railroad Com-
pany. That the complainants, the Illinois
Central Railroad Company being the own-

ers and holders of a portion of the series of third mortgage bonds and coupons which had become due and payable, demanded payment thereof which was denied. The said New Orleans, St. Louis & Chicago Railroad Company, under the term of said consolidation, agreed and promised to pay the amount due upon all of the bonds, with interest coupons thereon, secured by all the mortgages. The Illinois Central Railroad Company, as the holders of the bonds stated, filed their several bills of complaint in the United States courts through which said consolidated railroad runs, charging that said railroad companies and association are insolvent, and praying that the said road, with all its properties, might be delivered to the trustees named in said third mortgage, to be operated for the purpose of paying the amount due upon said third mortgage bonds. None of the trustees or bondholders under the first or second mortgages were made parties to this bill. The application to have the railroad, etc., turned over to the trustees has been denied, but J. B. Alexander, without objection, was appointed receiver, from Jackson, Miss., to the Tennessee line, by the United States courts of the several districts through which the same passes, who is now operating and managing the same. On an early day of the present term of this court, A. M. Clayton and other holders of the first and second mortgage bonds applied to be made party defendants to this cause, which application was granted; and for leave to answer, and also to file a cross bill, which leave was also granted. The answers were filed on the 17th of this month, and time given complainants to file exceptions; also time extended for filing cross bill. At the same time the motion now under consideration was filed.

HILL, District Judge. The facts above stated appear from the pleadings and papers on file, and for the purpose of the motion will be considered as true. I will first consider some of the positions argued by counsel against the proceedings appointing the receiver, and for which it is urged the motion should be sustained.

First, it is urged that complainants have not shown by their bill that their mortgage was recorded, and that without which it is insisted it is void. In reply to this objection it is insisted that, as between mortgagor and mortgagee, the recording of the mortgage is unnecessary. Such I understand to be the law of this state, but the mortgage was not necessary to the validity of the bonds; it is only a means to secure payment. The bill alleges that the bonds were issued under legislative authority, and, if so, and no other objection is shown against their validity, they constitute a debt against the corporation that issued them; and the mortgage security given was valid between the parties to it without registration.

Secondly, it is insisted that the order appointing the receiver was irregular, if not void, as against the prior mortgagees, unless they had been made parties, or it had contained a provision that their rights should not be affected by the appointment. Quite a number of authorities have been read and commented upon by the learned and experienced counsel on both sides upon this as well as all other points raised, but, when considered together, in my judgment establish the rule that when a prior mortgagee fails to take possession of the mortgaged property, a junior encumbrancer whose rights are likely to be injured by the property remaining in the possession of the mortgagor, may file his bill, and, if sufficient cause is shown, may have the property placed in the hands of a receiver without making prior encumbrancers parties; and whether the order appointing receiver contain the provision that it is without prejudice to the prior encumbrancers or not, it is without such prejudice. But when the receiver takes possession under his appointment he holds as the officer of the court, and, being in the possession of the court, it cannot be taken out of the possession of its officer only by order of the court, whose duty it is to protect and enforce all the rights of parties to the property then or afterward appearing, or who may be brought before it. I am satisfied that this objection to the order appointing receiver is not maintainable.

The record and papers now before the court show that a portion of the first mortgage bonds, with interest, are now due, and that payment has been demanded and default made for more than 60 days, and that the trustees have been requested to take possession of the mortgaged property under the powers contained in the mortgage, and that they are willing to take possession and execute the trust. The case, as at present presented, shows that there is a large amount of indebtedness due upon the first and second mortgage bonds, for which the property now in the hands of the receiver, covered by these mortgages, is liable, before the complainants can enforce their security or demands; and that this property and its income should and must be applied first to the debts secured by the first mortgage, then to those secured by the second mortgage, then to those secured by the mortgage under which complainants claim, and the residue, if any, to the mortgagors. As at present presented, the only question is as to how this property can best be used and applied so as best to secure and enforce these rights. The property is the property of the mortgagors, subject only to the encumbrances in their order of priority. The mortgagees are only securities. The power conferred upon the trustees to take possession, operate, and sell, if necessary, is a mode provided by contract for the execution of

the trust without the aid of the court; and were the trustees under either of these prior mortgagees to take possession of the property, and undertake to execute the trusts, in a manner prejudicial to the subsequent incumbrancers, a court of equity, upon application, would restrain such improper execution, either upon its restraining orders upon the trustees, or take it out of their possession, and place it in the hands of a receiver. In other words, it is a duty of a court of equity, when properly applied to, to see that trust property is so managed and disposed of as to secure and protect the rights of all parties having an interest therein, according to their priority. This court, as I believe, has properly possessed itself of the property for the benefit of those who may show themselves entitled to it, and will, as far as its judgment will permit, see that it is used, controlled, and disposed of so as to secure the rights of all parties in it. It is insisted upon the part of the trustees that they have the legal title to this property, and that this court, as a court of equity, has no right to hold it from their possession. It is true that they have a legal title, but this is only for the purpose of executing a trust, which, if the circumstances require, this court, as a court of equity, has the power to execute; and the court, having possession of the trust property, cannot be called upon to surrender it, unless it is shown that the trustees can better execute the trust in justice to all parties than the court, through its orders and decrees, executed by its officers. This, to my mind, has not been fully shown, and I might, without saying more, for this reason overrule the motion now insisted upon. But as the questions in this cause have been very fully and ably presented by the distinguished counsel on both sides, and as the case is one of unusual importance, not only to the parties immediately concerned, but to the public, whose means have been contributed to the building of this great thoroughfare, and from which no return has been or ever will be made, except the incidental advantages enjoyed, I hoped to be pardoned to consider in anticipation some of the questions involved.

The property now under control of the receiver extends from New Orleans to the Tennessee line. The property covered by these first and second mortgages embraces only the railroad and its appurtenances from Canton to the Tennessee line, and the rolling stock, etc., wherever it may be. That for the purpose of executing these trusts this property should be separated from the balance of the property now in the hands of the receiver, and managed and controlled by a receiver or other agent, subject to the orders and control of one court, if it can be done, I think must be apparent to any disinterested mind understanding the present complications surrounding the cases. At present some 40 miles of the railroad is sub-

ject to the orders and decrees of the circuit court for the Southern district of this state, and must remain so until released by the order of that court, or one of its judges, upon proper proceedings at chambers. As the process of this court extends to that district, I submit whether it will not be best to take such steps as will give to the one court or the other the control, so far at least as the present management is concerned. No long delay need take place. Those making this motion have obtained leave to file a cross-bill, which I presume will be done in a short time; and upon that proceeding, and within a short time, any needed steps may be taken to place the road and property covered by the first and second mortgages under the separate control of the one court or the other, under the trustees as receivers, if they shall be deemed best qualified, or under some other competent person or persons, so as fully to secure the rights of all. Or, if the complainants prefer, they may pay off or otherwise secure the debts secured by the first and second mortgage, and let the property remain under the control of the present receiver as now managed by him.

In stating my views on the questions presented I have not referred to and commented upon the numerous authorities read and commented upon by counsel, but have considered the rule thereon stated, and applied them to the facts to this case according to my best judgment. Nor have I considered the question as to whether the motion is properly made to obtain the relief sought by the motion, as I am of the opinion that there is not sufficient cause shown for placing the property in the possession of the trustees, otherwise than as receivers under any form of proceeding. I am. however, satisfied that the cross bill prepared to be filed is the more appropriate mode.

ILLINOIS CENT. R. CO. (TURRILL v.). See Cases Nos. 14,270–14.272.

ILLINOIS CENT. R. CO. (UNITED STATES v.). See Case No. 15.437.

ILLINOIS CENT. R. CO. (WOODWARD v.). See Cases Nos. 18.006 and 18.007.

ILLINOIS CENT. RY. CO. (YORK MANUF'G CO. v.). See Case No. 18.143.

ILLINOIS MANUF'G CO. (ADAMS v.). See Case No. 54.